IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTRAL IOWA HOSPITAL CORPORATION**, successor-in-interest to Iowa Lutheran Hospital,<br><br>　　　　**Plaintiff**,<br><br>　v.<br><br>**MICHAEL O. LEAVITT**, as Secretary of Health and Humans Services,<br><br>　　　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:07-cv-00295-RWR |

## NOTICE OF FILING OF ADMINISTRATIVE RECORD

Defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, through the undersigned counsel, has answered Plaintiff's Complaint in the above-entitled case on this day of April 9, 2007.

-2-

With this notice, Defendant now files the certified administrative record, in four volumes, in the above-entitled case.

| | |
|---|---|
| Dated: April 9, 2007 | Respectfully submitted, |
| Of Counsel: | PETER D. KEISLER<br>Assistant Attorney General |
| DANIEL MERON<br>General Counsel | JEFFREY A. TAYLOR<br>United States Attorney |
| KATHLEEN H. McGUAN<br>Associate General Counsel | |
| |    /s/ Joel McElvain |
| MARK D. POLSTON.<br>Deputy Associate General<br>   Counsel for Litigation | SHEILA M. LIEBER, Deputy Director<br>JOEL McELVAIN, Attorney, D.C. Bar # 448431<br>United States Department of Justice<br>Civil Division, Federal Programs Branch |
| DAVID HOSKINS<br>Attorney<br>Office of the General Counsel<br>U.S. Department of Health<br>   and Human Services | 20 Massachusetts Ave., NW, Room 7130<br>Washington, D.C. 20001<br>Telephone:  (202) 514-2988<br>Fax:  (202) 616-8202<br>Email:  Joel.L.McElvain@usdoj.gov |
| | *Attorneys for Defendant* |

CERTIFICATE OF SERVICE

    I hereby certify that on this 9th day of April, 2007, I caused this document to be filed in this Court's electronic filing system, and that that filing constituted service of the document on the attorney listed below. I also hereby certify that on this 9th day of April, 2007, I have filed an original and one copy of the Administrative Record, in four volumes, with the Clerk of the Court, and that I caused a copy of the Administrative Record, in four volumes, to be delivered to the following counsel by Federal Express:

        Leon Rodriguez, Esquire
        Ober, Kaler, Grimes & Shriver
        1401 H Street, NW, Suite 500
        Washington, DC 20005


          /s/ Joel McElvain
        JOEL McELVAIN
        *Attorney*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTRAL IOWA HOSPITAL CORPORATION**, successor-in-interest to Iowa Lutheran Hospital, | ) ) ) ) |
| **Plaintiff**, | ) ) |
| v. | ) Case No. 1:07-cv-00295-RWR ) ) |
| **MICHAEL O. LEAVITT**, as Secretary of Health and Humans Services, | ) ) ) |
| **Defendant.** | ) ) |

# NOTICE OF FILING OF SUPPLEMENT TO ADMINISTRATIVE RECORD

Defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, through the undersigned counsel, has separately answered Plaintiff's Complaint and has separately filed the certified Administrative Record, in four volumes, in this case. Defendant now files this certified supplement to the Administrative Record, consisting of

-2-

one document considered by the Administrator of the Centers for Medicare and Medicaid Services in this action that was inadvertently omitted from the original certification of the record.

| | |
|---|---|
| Dated: April 9, 2007 | Respectfully submitted, |
| Of Counsel: | PETER D. KEISLER<br>Assistant Attorney General |
| DANIEL MERON<br>General Counsel | JEFFREY A. TAYLOR<br>United States Attorney |
| KATHLEEN H. McGUAN<br>Associate General Counsel | |
| |    /s/ Joel McElvain |
| MARK D. POLSTON.<br>Deputy Associate General<br>   Counsel for Litigation | SHEILA M. LIEBER, Deputy Director<br>JOEL McELVAIN, Attorney, D.C. Bar # 448431<br>United States Department of Justice<br>Civil Division, Federal Programs Branch |
| DAVID HOSKINS<br>Attorney<br>Office of the General Counsel<br>U.S. Department of Health<br>   and Human Services | 20 Massachusetts Ave., NW, Room 7130<br>Washington, D.C. 20001<br>Telephone: (202) 514-2988<br>Fax: (202) 616-8202<br>Email: Joel.L.McElvain@usdoj.gov |
| | *Attorneys for Defendant* |

# ATTACHMENT

IN UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

CENTRAL IOWA HOSPITAL )
CORPORATION, successor-in-interest )
to IOWA LUTHERAN HOSPITAL )
)
Plaintiff, )
)
)
)
)
vs. ) Case No. 1:07CV00295
)
)
)
)
MICHAEL O. LEAVITT, SECRETARY )
DEPARTMENT OF HEALTH AND )
HUMAN SERVICES, )
)
Defendant. )

# C E R T I F I C A T I O N

I, Jacqueline R. Vaughn, Attorney Advisor, Centers for Medicare and Medicaid Services, Department of Health and Human Services, under authority delegated by the Secretary, certify that the document attached constitutes a true copy of Transmittal A-00-76 entitled Clarification of the Application of the Regulations at 42 CFR 413.134(1) to Mergers and Consolidations Involving Non-profit Providers. This document is referenced in the administrative record but was not included. This document has been designated pages 1536 through 1541 of the administrative court record.

Date: April 6, 2007

Jacqueline R. Vaughn

CMS - Program Memoranda
Intermediaries
2000
PM Rev. A-00-76, Clarification of the Application of the Regulations at 42 CFR 413.134(l) to Mergers and Consolidations Involving Non-profit Providers

1.

Program Memorandum

Department of Health and Human Services (DHHS)

Intermediaries

HEALTH CARE FINANCING ADMINISTRATION (HCFA)

PM Rev. A-00-76, Clarification of the Application of the Regulations at 42 CFR 413.134(l) to Mergers and Consolidations Involving Non-profit Providers

Date: OCTOBER 19, 2000

CHANGE REQUEST 1290

SUBJECT: Clarification of the Application of the Regulations at 42 CFR 413.134(l) to Mergers and Consolidations Involving Non-profit Providers

BACKGROUND

This Program Memorandum (PM) is being issued to clarify application of the regulations at 42 CFR 413.134(l) (originally, 42 CFR 405.415(l)) to mergers and consolidations involving non-profit providers. The purpose of that regulation section, originally published February 5, 1979 (44 FR 6912), was to clarify existing Medicare program policy concerning certain effects of capital stock transactions involving for-profit providers. In summary, that regulation section provides that the acquisition of the capital stock of a provider, in and of itself, is not a change of ownership for Medicare payment purposes, and therefore, would not give rise to a revaluation of the acquired assets, nor an adjustment to recognize a gain or loss on the disposal of assets. The regulation further provides that mergers or consolidations between or among for-profit providers would give rise to a revaluation of the merged or consolidated assets only if the parties to the merger or consolidation are not related organizations as defined in the regulations at 42 CFR 413.17.

With regard to recognizing a gain or loss adjustment on the merged or consolidated assets, the regulation provides that such gain or loss may be recognized, but only as provided for in the regulations at 42 CFR 413.134(f). That latter regulation section provides for the recognition of a gain or loss only where the asset disposal results from a bona fide sale or scrapping (occurring before December 1, 1997), a demolition or abandonment, or an involuntary conversion. A bona fide sale is defined in the Provider Reimbursement Manual (PRM), Part 1, (HCFA Pub. 15-1) at §104.24. Therefore, the merger or consolidation must involve one of those events in order to

1536

trigger the recognition of a gain or loss on the merged or consolidated assets.

**NOTE:** Section 4404 of the Balanced Budget Act of 1997 effectively eliminated Medicare recognition of gains or losses resulting from the sale or scrapping of an asset that occurs on or after December 1, 1997. Thus, adjustments to recognize gains and losses on sales or scrappings of assets that occur on or after that date will not be recognized for Medicare payment purposes. Regulations implementing this change were published in the *Federal Register* on January 9, 1998 (63 FR 1379).

Because there is no similar regulation specifically addressing mergers and consolidations between or among non-profit entities, we are clarifying the applicability of the above cited regulation sections to such mergers or consolidations.

## APPLICATION

The above cited regulation sections are applicable to mergers and consolidations involving non-profit providers. However, as with transactions involving for-profit entities, in order for Medicare to recognize a gain or loss on the disposal of assets, the merger or consolidation must occur between or among parties that are not related as described in the regulations at 42 CFR 413.17 and the transaction must involve one of the events described in 42 CFR 413.134(f) as triggering a gain or loss recognition by Medicare (typically, a bona fide sale, as defined in the PRM at §104.24, because a merger or consolidation could, but usually does not, involve a scrapping, demolition, abandonment, or involuntary conversion).

HCFA-Pub. 60A

## SPECIAL CONSIDERATIONS APPLICABLE TO TRANSACTIONS INVOLVING NON-PROFIT ORGANIZATIONS

Non-profit organizations differ in significant ways from for-profit organizations. Non-profit organizations typically do not have equity interests (i.e., shareholders, partners), exist for reasons other than to provide goods and services for a profit, and may obtain significant resources from donors who do not expect to receive monetary repayment of, or a return on, the resources they provide. These differences, among others, cause non-profit organizations to associate or affiliate through mergers or consolidations for reasons that may differ from the traditional for-profit merger or consolidation. Because the regulations at 42 CFR 413.134(l) were written to address only for-profit mergers and consolidations, certain special considerations must be regarded in applying that regulation section to non-profit mergers and consolidations.

Related Organizations:

Unlike for-profit mergers or consolidations, which often involve a dispatching of the former governing body and/or management team, many non-profit mergers and consolidations involve the continuation, in whole or in part, of the former governing board and/or management team. In applying the related organizations principle at 42 CFR 413.17, consideration must be given to whether the composition of the new board of directors, or other governing body or management team, includes significant representation from the previous board(s) or management team(s). If that is the case, no real change of control of the assets has occurred and no gain or loss may be

recognized as a result of the transaction. The fact that the parties are unrelated before the transaction does not bar a related organizations finding as a result of the transaction. That is, it is appropriate to compare the governing board/management team composition before the transaction with the governing board/management team composition after the transaction, even though there was no contemporaneous co-existence of those boards/teams. (See HCFA Ruling HCFAR 80-4 and the PRM at §1011.4.) Moreover, whether the constituent corporations in a merger or consolidation are or are not related is irrelevant; rather, the focus of the inquiry should be whether significant ownership or control exists between a corporation that transfers assets and the corporation that receives them. The term "significant" as used in this PM has the same meaning as the terms "significant" or "significantly" in the regulations at 42 CFR 413.17 and the PRM at Chapter 10. Important considerations in this regard include that 1) the determination of common control is subjective (i.e., there is no objective measure or rule of thumb" in establishing common control), 2) each situation stands on its own merits based on the facts and circumstances unique to that situation, 3) a finding of common control does not require 50 percent or more representation, and 4) there is no need to look "behind the numbers" to see if control is actually being exercised, rather the mere potential to control is sufficient.

**EXAMPLE 1**: Corporation A and Corporation B, both non-profit providers, are combined by statutory merger with Corporation A surviving. Corporations A and B were unrelated prior to the transaction, each being controlled by its respective Board of Directors of ten members each. After the merger, Corporation A's new ten member Board of Directors includes five individuals that served on Corporation A's pre-merger board, and five individuals that served on Corporation B's pre-merger board. Thus, Corporation A's new Board of Directors includes a significant number of individuals from both of the former entities' boards. Because no significant change of control of the assets of former Corporation B has occurred, the transaction as between Corporation A and Corporation B is deemed to be between related parties and no gain or loss will be recognized as a result of the transaction.

**EXAMPLE 2**: Corporation A and B consolidate to form Corporation C. Corporations A and B were unrelated prior to the transaction, each being controlled by its respective Board of Directors of eight members each. After the consolidation, Corporation C's Board of Directors consists of seven individuals, all of whom were members of Corporation A's board. Because no significant change of control of the assets of Corporation A occurred, the transaction as between A and C is deemed to be one of related parties and no gain or loss on will be recognized as a result of the

transaction. However, because there has been a significant change of control of the assets of Corporation B, the transaction as between B and C is <u>not</u> one of related parties. Therefore, with respect to the assets transferred from B to C, a gain or loss may be recognized (if the other criteria for recognizing gain or loss, including the requirement of a <u>bona fide</u> sale are met).

Bona Fide Sale:

Unlike for-profit mergers or consolidations, which are typically driven by the ownership equity interests to seek fair market value for the assets involved in the transaction, many non-profit mergers and consolidations have only the interests of the community-at-large to drive the transaction. This community interest does not always involve engaging in a <u>bona fide</u> sale or seeking fair market value for the assets given. Rather, the assets and liabilities are simply

1538

combined on the merged or consolidated entity's books. The merged/consolidated entity may or may not record a gain or loss resulting from such a transaction for financial reporting purposes. Notwithstanding the treatment of the transaction for financial accounting purposes, no gain or loss may be recognized for Medicare payment purposes unless the transfer of the assets resulted from a <u>bona fide</u> sale as required by regulation 413.134(f) and as defined in the PRM at §104.24. The regulations at 42 CFR 413.134(l) do not permit recognition of a gain or loss resulting from the mere combining of multiple entities' assets and liabilities without regard to whether a <u>bona fide</u> sale occurred.

A <u>bona fide</u> sale typically occurs under the following general circumstances. From the perspective of the seller, a preliminary decision is made to consider selling the business. Word is spread that the property may be available for purchase. The seller's main objective is to maximize the consideration received and the seller would not be expected to be interested in who the buyer is except for the buyer's ability to pay. If the seller receives an offer to its liking, it will agree to a sale. From the buyer's perspective, the environment is the same except the buyer is seeking to minimize the price paid. If a deal is reached, the marketplace negotiations between the seller and the buyer have defined the arms-length component of a <u>bona fide</u> sale. In other words, for Medicare payment purposes, a recognizable gain or loss resulting from a sale of depreciable assets arises after an arm's-length business transaction between a willing and well-informed buyer and seller. An arm's-length transaction is a transaction negotiated by unrelated parties, each acting in its own self interest in which objective value is defined after selfish bargaining. However, frequently this is not the environment that brings non-profit entities together through merger or consolidation.

As with for-profit entities, in evaluating whether a <u>bona fide</u> sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets acquired is a required aspect of such analysis. As set forth in PRM §104.24, reasonable consideration is a required element of a <u>bona fide</u> sale. Thus, a large disparity between the sales price (consideration) and the fair market value of the assets sold indicates the lack of a <u>bona fide</u> sale. With regard to non-profit mergers or consolidations, often the sales price consists of assumed debt only, but may also include cash and/or new debt. Non-monetary consideration, such as a seller's concession from a buyer that the buyer must continue to provide care for a period of time or to provide care to the indigent, may not be taken into account in evaluating the reasonableness of the overall consideration (even where such elements may be quantified in dollar terms). These factors are more akin to goodwill than to consideration.

Appraisals may be relied on to establish the fair market value of depreciable assets. (See PRM §§134ff.) However, caution must be taken in evaluating the appropriateness of the valuations established by appraisal for the purpose of this comparison.

The three most common valuation methodologies are the "cost approach," the "market approach," and the "income approach." A single appraisal may use one or more of these methodologies to arrive at a valuation of the entity. The cost approach is the only methodology that produces a discrete indication of the value for the individual assets of the business, and thus, is the approach that is used to allocate a lump sum sales price among the assets sold. (See 42

CFR 413.134(f)(2)(iv).) The market approach produces an estimate of value by comparing the entity being valued to sales of similar businesses. The income approach produces a valuation through analysis of the predicted future stream of income. Both the market approach and the income approach produce a valuation of the business enterprise as a whole, without regard to the individual fair market values of the

constituent assets. As a result, both the market approach and the income approach could produce an entity valuation that is less than the market value of the current assets. Moreover, the income approach has minimal application in the non-profit sector because 1) earnings are often understated due to charity care, pricing limitations, and government regulations, and 2) the approach uses complex formulae that include some factors that are of questionable use in valuing non-profit entities (e.g., common stock risk premium). For the foregoing reasons, the cost approach is the most appropriate methodology to be used in establishing the fair market value of the assets sold for the purpose of comparison with the sales price in a bona fide sale analysis.

Moreover, in analyzing whether a bona fide sale has occurred, a review of the allocation of the sales price among the assets sold is appropriate. In some situations, the "sales price" of the assets may be barely in excess of, or less than, the market value of the current assets sold, leaving a minimal, or no, part of the sales price to be allocated to the fixed (including the depreciable) assets. In such a circumstance, effectively the current assets have been sold, and the fixed assets have been given over at minimal or no cost. If a minimal or no portion of the sales price is allocated to the fixed (including the depreciable) assets a bona fide sale of those assets has not occurred. In this regard, because consideration was exchanged for the business as a whole, this type of transaction should not be considered a donation of the fixed assets (see the PRM at §104.16). Rather, this should be viewed as a non-bona fide sale of the fixed assets.

**EXAMPLE 3**: Corporation A and B merge, with Corporation A being the surviving corporation. The assets transferred from Corporation B consisted of cash, cash equivalents, and other current assets totaling $23 million and fixed assets (plant, property, and equipment) valued at $24 million by an independent appraisal. Corporation B's liabilities that were assumed by Corporation A totaled $22 million. No other consideration was exchanged as part of the transaction. Because the sales price (assumed liabilities) is allocated first to the cash, cash equivalents, and other current assets, no part of the sales price was allocated to the fixed assets. Because no part of the purchase price was allocated to the fixed assets, a bona fide sale of those assets has not occurred and Medicare would not recognize a loss as a result of the transaction.

Absent evidence of a bona fide sale of the assets, a reasonable conclusion may be drawn that the gain or loss resulted from the mere combining of the assets and liabilities of the merged/consolidated entities. Because neither the regulations nor the program instructions provide for Medicare recognition of such gains or losses, the gains or losses must be denied.

**The effective date for this PM is not applicable. This PM does not include any new policies regarding mergers or consolidations involving non-profit entities. Intermediaries are to apply this clarification to all cost reports for which a final notice of program reimbursement has not been issued and to all settled cost reports that are subject to reopening in accordance with the Provider Reimbursement Manual, Part 1, (HCFA Pub. 15-1), Chapter 29.**

The implementation date for this PM is October 19, 2000.

These instructions should be implemented within your current operating budget.

This PM may be discarded after July 30, 2001.

If you have any questions, contact Ann Pash at (410) 786-4516 or via email (apash@hcfa.gov).

1541