IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTRAL IOWA HOSPITAL** <br> **CORPORATION**, successor-in-interest to <br> Iowa Lutheran Hospital, <br><br> **Plaintiff**, <br><br> v. <br><br> **MICHAEL O. LEAVITT**, as Secretary of <br> Health and Humans Services, <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:07-cv-00295-RWR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

The defendant, Michael O. Leavitt, Secretary of the Department of Health and Human Services, hereby respectfully advises the Court of the recent published opinion of the United States Court of Appeals for the Ninth Circuit in *Robert F. Kennedy Medical Center v. Leavitt*, No. 06-56367, — F.3d — (9th Cir. May 19, 2008).

The court of appeals held, as the Secretary has argued in this case, that a merger or a consolidation must qualify as a "bona fide sale" under 42 U.S.C. § 413.134(f) in order for a party to that transaction to claim an adjustment to its Medicare depreciation allowance. (Slip op. at 5744.) The court of appeals also held that, under the Secretary's reasonable interpretation of his regulations, a "bona fide sale" must be the product of arm's length bargaining, and must result in an exchange of reasonable consideration. (Slip op. at 5744-45.) The merger at issue in this case was not the product of arm's length bargaining, and did not result in an exchange of reasonable consideration, as the Secretary has explained at pages 23 to 25 of his initial memorandum in support of his summary judgment motion and at pages 5 to 6 of his reply memorandum. The

-2-

merger here thus was not a "bona fide sale," and this Court may affirm the decision of the Administrator for this reason.

A copy of the Ninth Circuit's opinion is attached for the Court's convenience.

| | |
|---|---|
| Dated: May 20, 2008 | Respectfully submitted, |
| Of Counsel: | GREGORY G. KATSAS<br>Acting Assistant Attorney General |
| THOMAS R. BARKER<br>Acting General Counsel | JEFFREY A. TAYLOR<br>United States Attorney |
| JANICE L. HOFFMAN<br>Associate General Counsel | |
| |    /s/ Joel McElvain |
| MARK D. POLSTON.<br>Deputy Associate General<br>   Counsel for Litigation | SHEILA M. LIEBER, Deputy Director<br>JOEL McELVAIN, Attorney, D.C. Bar # 448431<br>United States Department of Justice<br>Civil Division, Federal Programs Branch |
| DAVID HOSKINS<br>Attorney<br>Office of the General Counsel<br>U.S. Department of Health<br>   and Human Services | 20 Massachusetts Ave., NW, Room 7130<br>Washington, D.C. 20001<br>Telephone:  (202) 514-2988<br>Fax:  (202) 616-8202<br>Email:  Joel.L.McElvain@usdoj.gov |
| | *Attorneys for Defendant* |

**ATTACHMENT**

Case 1:07-cv-00295-RWR   Document 31   Filed 05/20/2008   Page 3 of 14

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT F. KENNEDY MEDICAL
CENTER,
        *Plaintiff-Appellant,*

        v.

MICHAEL O. LEAVITT, Secretary of
the Department of Health and
Human Services,
        *Defendant-Appellee.*

No. 06-56367

D.C. No.
CV-05-01628-AG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
April 11, 2008—Pasadena, California

Filed May 19, 2008

Before: Alfred T. Goodwin, Harry Pregerson, and
Dorothy W. Nelson, Circuit Judges.

Opinion by Judge Goodwin

5735

**COUNSEL**

Patric Hooper, Hooper, Lundy & Bookman, Los Angeles, California, for the plaintiff-appellant.

Michael S. Raab, Joel McElvain, U.S. Department of Justice, Washington, D.C., for the defendant-appellee.

**OPINION**

GOODWIN, Circuit Judge:

Robert F. Kennedy Medical Center ("RFK") appeals the district court's summary judgment, which affirmed the denial of RFK's Medicare reimbursement request by the Secretary of Health and Human Services ("Secretary"). RFK contends that the Secretary must reimburse it for depreciation losses resulting from its disposal of assets through a statutory merger. The district court held that RFK is not eligible for reimbursement because this merger did not qualify as a "bona fide sale" under 42 C.F.R. § 413.134(f). We agree, and affirm the judgment.

**I**

Title XVIII of the Social Security Act establishes Medicare, a federally funded health insurance program for the

5738        Robert F. Kennedy Medical v. Leavitt

elderly and disabled. 42 U.S.C. §§ 1395 *et seq.* The Centers for Medicare and Medicaid Services ("CMS"), formerly called the Health Care Financing Administration ("HCFA"), administers the Medicare program on behalf of the Secretary.

Providers of Medicare services are eligible for reimbursement of "the reasonable cost of such services." *Id.* § 1395f(b)(1). The statute defines "reasonable cost" as "the cost actually incurred" by providers. *Id.* § 1395x(v)(1)(A). Under regulations promulgated by the Secretary, providers may claim reimbursement for "depreciation on buildings and equipment used in the provision of patient care." 42 C.F.R. § 413.134(a). The depreciation reimbursement amount is calculated by taking the "cost incurred by the present owner in acquiring the asset," *id.* § 413.134(b)(1), and prorating it "over the estimated useful life of the asset," usually using the "straight-line method" of depreciation. *Id.* § 413.134(a)(2)-(3). Medicare reimburses providers for the percentage of depreciation attributable to treatment of Medicare patients.

Depreciation only approximates an asset's decrease in value. To ensure that Medicare providers are reimbursed for actual costs, 42 C.F.R. § 413.134(f) requires an adjustment when "gains" or "losses" result from certain disposals of depreciable assets: "If disposal of a depreciable asset . . . results in a gain or loss, an adjustment is necessary in the provider's allowable cost. . . . The treatment of the gain or loss depends upon the manner of disposition of the asset, as specified in paragraphs (f)(2) through (6) of this section."

The only disposition that is relevant in this case is (f)(2), which governs gains and losses resulting from a "bona fide sale" of depreciable assets. *See id.* § 413.134(f)(2). When Medicare providers dispose of assets in a "bona fide sale" and receive a "lump sum sale price," the regulations require them to "allocat[e] the lump sum sales price among all the assets sold, in accordance with the fair market value of each asset . . . ." *Id.* § 413.134(f)(2)(iv). If providers receive consider-

ROBERT F. KENNEDY MEDICAL v. LEAVITT          5739

ation that is less than the net book value of the depreciable asset, Medicare reimburses the provider for Medicare's share of the "loss." *See id.* § 413.134(f); *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1262 (10th Cir. 2007). If the consideration exceeds the asset's net book value, the provider must reimburse Medicare for Medicare's share of the "gain." *See* 42 C.F.R. § 413.134(f); *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1262.

Regulations also address the effect of a statutory merger involving a Medicare provider. *See* 42 C.F.R. § 413.134(k)(2).[1] First, a gain or loss resulting from disposal of depreciable assets is not allowed when the parties to a statutory merger are "related." *Id.* § 413.134(k)(2)(i)-(ii); *see also id.* § 413.17(b)(1) (defining "related"). Second, § 413.134(k)(2)(i) states that merged providers are "subject to the provisions of paragraphs (d)(3) and (f) of this section concerning recovery of accelerated depreciation and the realization of gains and losses." Thus, the regulation on statutory mergers incorporates 42 C.F.R. § 413.134(f), which specifies the circumstances in which gains or losses are allowable following a disposal of depreciable assets.

The Secretary interprets these regulations as allowing an adjustment for gains or losses resulting from a statutory merger only if the provider's depreciable assets were transferred through one of the categories of disposal listed in § 413.134(f). *See* Principles of Reimbursement for Provider Costs and for Services by Hospital-Based Physicians, 44 Fed. Reg. 6912, 6913 (Feb. 5, 1979); Program Memorandum A-00-76, at 3 (Oct. 19, 2000), *available at* http://www.cms.hhs.gov/transmittals/downloads/A0076.pdf. Under the Secretary's interpretation, Medicare will not recognize a gain or loss on a disposal of depreciable assets through a stat-

---

[1] At the time of the statutory merger in this case, 42 C.F.R. § 413.134(k) was codified at 42 C.F.R. § 413.134(*l*). The provision was originally codified at 42 C.F.R. § 405.415(*l*).

5740        ROBERT F. KENNEDY MEDICAL v. LEAVITT

utory merger unless the merger qualifies as a "bona fide sale" under § 413.134(f)(2). *See* Program Memorandum A-00-76, at 3.

   The Secretary also has interpreted the meaning of the term "bona fide sale." In 1996, the HCFA revised the Medicare Provider Reimbursement Manual to state that "[a] bona fide sale contemplates an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration." Provider Reimbursement Manual § 104.24; *see also Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1267. In 2000, the HCFA stated that "in evaluating whether a *bona fide* sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets acquired is a required aspect of such analysis." Program Memorandum A-00-76, at 3. In the context of a statutory merger between Medicare providers, "a large disparity between the sales price (consideration) and the fair market value of the assets sold indicates the lack of a *bona fide* sale." *Id.*

## II

   Prior to the statutory merger at issue in this case, RFK and St. Francis Medical Center ("St. Francis") operated separate hospitals in California. Catholic Healthcare West ("CHW") was the sole corporate member of St. Francis. All entities were non-profit public benefit corporations. RFK provided hospital services to Medicare patients under a contract with the Secretary.

   In January 1996, RFK began negotiating with CHW regarding a potential merger with St. Francis. RFK and CHW both were represented by their own counsel and negotiating teams. The negotiations included discussion on "post-merger governance and operational issues and the price to be paid for the non-hospital assets." The parties agreed that RFK would

merge into St. Francis, and that RFK would cease to exist. The statutory merger occurred on May 30, 1996. As the surviving corporation, St. Francis changed its name to Catholic Healthcare West Southern California ("CHW-SC").

Under the merger agreement, CHW-SC became the new corporate owner of RFK's assets and liabilities. RFK transferred approximately $29 million in current assets (including cash and cash equivalent) and approximately $21 million in fixed assets (including land, buildings and equipment). In exchange, CHW-SC assumed approximately $30.5 million of RFK's net liabilities. Thus, RFK transferred assets with a value of approximately $50 million in exchange for $30.5 million in "consideration" from CHW-SC.

RFK then filed a terminating cost report with Medicare's fiscal intermediary, claiming that the merger resulted in a reimbursable loss from RFK's disposal of depreciable assets. In calculating the effect of the merger, the cost report allocated CHW-SC's consideration (the assumption of liabilities) to the current assets transferred by RFK (cash and cash equivalent). After this initial allocation, there was no consideration left to allocate to the depreciable fixed assets transferred by RFK, including buildings and equipment. RFK claimed a total loss on these depreciable assets, and sought reimbursement for Medicare's share of the loss.

The fiscal intermediary audited RFK's cost report and denied the claim. The intermediary gave three reasons for disallowing the loss. First, the intermediary concluded that 42 C.F.R. § 413.17 barred the claim because RFK and St. Francis were related parties prior to the merger. Second, the intermediary stated that the merger was not a "bona fide sale" under 42 C.F.R. § 413.134(f)(2). Third, the intermediary found that the merger was a "pooling of interests" under accepted accounting principles, with no resulting gain or loss.

RFK appealed to the Provider Reimbursement Review Board ("PRRB"), which reversed the fiscal intermediary's

determination. The PRRB found no evidence that the parties were related prior to the merger. It also concluded that the merger qualified as a "bona fide sale" because "RFK determined on its own initiative that it should seek affiliation with a larger health system" and "RFK requested and considered [merger] proposals from various interested parties." The PRRB rejected the fiscal intermediary's "pooling of interests" rationale because "[t]he treatment afforded a transaction for financial statement and Internal Revenue Service purposes does not control the treatment required for Medicare purposes."

The CMS Administrator reversed the PRRB's decision. First, the Administrator concluded that RFK was related to CHW-SC, the surviving entity, and that no reimbursable loss occurs when assets are transferred in a related-party transaction. Second, the Administrator found that the statutory merger did not qualify as a "bona fide sale":

> [T]he record shows that the Provider transferred "current assets" valued at approximately $29 million and "fixed assets" valued at $21 million in exchanged [sic] for approximately $30.5 million in net liabilities. This resulted in assets with a net book value of $50 million being transferred for a total of $30.5 million in "consideration." The Administrator finds that the large disparity of approximately $20 million, between the asset values and the consideration received, reflects the lack of arm's length bargaining, and thus the lack of a *bona fide* sale.

As a result, the Administrator concluded that RFK's loss did not qualify for reimbursement under 42 C.F.R. § 413.134(f).

RFK appealed to federal district court, which affirmed the CMS Administrator's decision. Under *Thomas Jefferson University v. Shalala*, 512 U.S. 504 (1994), the district court deferred to the agency's interpretation of the Medicare regula-

tions. The court held that the statutory merger was not a "bona fide sale" because RFK did not receive fair market value for its assets. Because the district court concluded that RFK was not entitled to reimbursement, it did not reach the "related parties" issue.

This appeal followed.

### III

RFK contends that the district court erred by affirming the final agency decision, which held that RFK could not claim a "loss" on its disposal of assets because its statutory merger did not qualify as a "bona fide sale." RFK argues that the Secretary's decision was arbitrary, and that the "bona fide sale" requirement does not apply to disposals of assets in the context of statutory mergers. The Secretary contends that the "bona fide sale" requirement is consistent with the text and purposes of Medicare statutes and regulations.

**[1]** The Administrative Procedure Act requires courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We also must set aside an agency action that is "unsupported by substantial evidence." *Id.* § 706(2)(E). Courts must give "substantial deference" to the Secretary's interpretation of Medicare reimbursement regulations. *Thomas Jefferson Univ.*, 512 U.S. at 512. Under this standard of review,

> the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

| 5744 | ROBERT F. KENNEDY MEDICAL v. LEAVITT |

*Id.* (internal quotation marks and citations omitted). This "broad deference" is especially warranted because Medicare regulations are "complex and highly technical" and determinations in this area "necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." *Id.* (internal quotation marks and citations omitted).

**[2]** The Secretary's interpretation that the realization of gains or losses on a statutory merger requires a "bona fide sale" is a reasonable construction of the Medicare regulations. The regulation governing statutory mergers, 42 C.F.R. § 413.134(k)(2), incorporates 42 C.F.R. § 413.134(f), which lists the categories of asset disposal that trigger readjustment for gains or losses. *See* 42 U.S.C. § 413.134(k)(2)(i) (stating that merged providers are "subject to the provisions of paragraph[ ] . . . (f) of this section concerning . . . the realization of gains and losses."). A "bona fide sale" is the only category listed in § 413.134(f) that arguably applies to a disposal of assets through statutory merger. *See id.* § 413.134(f)(2)-(6); *Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1275. Thus, the Secretary reasonably interpreted these regulations as allowing gains or losses on the disposal of depreciable assets only when the statutory merger qualifies as a "bona fide sale."

**[3]** The Secretary's interpretation that a "bona fide sale" requires "reasonable consideration" and a "comparison of the sales price with the fair market value of the assets" also is supported by the text and purpose of the Medicare statutes. Providers are entitled to reimbursement only for the "cost actually incurred" in servicing Medicare patients. 42 U.S.C. § 1395x(v)(1)(A). As the Secretary noted when promulgating 42 C.F.R. § 413.134(f), "if a gain or loss is realized from [a] disposition, reimbursement for depreciation must be adjusted so that Medicare pays the *actual cost* the provider incurred." *See* Principles of Reimbursement for Provider Costs and for Services by Hospital-based Physicians, 44 Fed. Reg. 3980 (Jan. 19, 1979) (emphasis added). The Secretary's requirements of "reasonable consideration" and "fair market value"

ROBERT F. KENNEDY MEDICAL v. LEAVITT  5745

ensure that Medicare reimburses actual costs, instead of providing a windfall to providers.

In a case with similar facts, the Tenth Circuit recently upheld the Secretary's interpretation of these Medicare regulations. In *Via Christi Regional Medical Center*, the court analyzed the Secretary's "bona fide sale" requirement in the context of a consolidation between Medicare providers. *See* 509 F.3d at 1274-77. The Tenth Circuit held that the Secretary's interpretation was reasonable, and noted that "[e]ven if a consolidation or statutory merger is not a 'sale' per se, treating it as a sale pursuant to § 413.134(f)(2) ensures that any depreciation adjustment will represent economic reality, rather than mere 'paper losses.' " *Id.* at 1275. The Tenth Circuit's reasoning is persuasive.

RFK contends that the "bona fide sale" requirement for statutory mergers contradicts the Secretary's intent at the time of the regulation's promulgation. RFK argues that a document known as the "Wolkstein Letter"[2] states that statutory mergers are to be treated as if they are bona fide sales. This argument misses the point that the Wolkstein Letter merely clarifies that, unlike purchase of capital stock, statutory mergers effect a change in asset ownership. The letter does not address whether statutory mergers also must meet the "bona fide sale" requirement to qualify for gains or losses under 42 C.F.R. § 413.134(f). Thus, the Wolkstein Letter does not contradict the Secretary's interpretation, which is reasonable and entitled to deference. *See Thomas Jefferson Univ.*, 512 U.S. at 512.

**[4]** In this case, substantial evidence supports the Secretary's determination that RFK's statutory merger was not a "bona fide sale." First, the transaction lacked "reasonable consideration." *See Via Christi Reg'l Med. Ctr.*, 509 F.3d at 1267.

---

[2]The letter is dated January 24, 1974, and was written by Irwin Wolkstein, Deputy Director for Program Policy at the Department of Health, Education and Welfare's Bureau of Health Insurance.

5746         ROBERT F. KENNEDY MEDICAL V. LEAVITT

The CMS Administrator noted that RFK transferred approximately $50 million in assets for $30.5 million in "consideration" from CHW-SC. As the Secretary argues, CHW-SC paid almost nothing for RFK's hospital buildings and equipment despite their appraised value of approximately $12 million.

**[5]** Second, the Administrator concluded that RFK did not attempt to obtain "fair market value" for its assets. *See id.* at 1276 ("In the 'bona fide sale' context, the reasonable consideration inquiry involves determining whether the provider received fair market value for its assets."). RFK gave several reasons for seeking a merger, none of which involved the receipt of fair market value. Similarly, none of RFK's criteria for selecting a merger partner involved receiving a fair price for its assets.

**[6]** The district court correctly concluded that substantial evidence supports the Secretary's determination. RFK is ineligible for reimbursement under 42 C.F.R. § 413.134(f) because its statutory merger with CHW-SC does not qualify as a "bona fide sale." Because this issue is dispositive in this case, we do not reach the "related parties" issue.

   AFFIRMED.