UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |  |
|---|---|---|
| CENTRAL IOWA HOSPITAL CORPORATION, successor-in-interest to Iowa Lutheran Hospital, | ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 07-cv-00295 (RCL) |
| KATHLEEN SEBELIUS,[1] as Secretary of Health and Human Services, | ) ) ) |  |
| Defendant. | ) ) ) |  |

———————————————————————

**MEMORANDUM OPINION**

Before the Court is plaintiff's Motion [14] for Summary Judgment, defendant's Cross-Motion [17] for Summary Judgment, and plaintiff's Motion [28] for Leave to Amend Complaint. Upon consideration of the summary judgment motions, the memoranda in support thereof, the parties' supplemental authority, the record, and the applicable law, the Court will DENY plaintiff's Motion for Summary Judgment and GRANT defendant's Cross-Motion for Summary Judgment. Upon consideration of plaintiff's Motion for Leave to Amend Complaint, defendant's opposition, the reply thereto, the record, and the applicable law, the Court will DENY plaintiff's motion. The Court's reasoning is set forth below.

## I. BACKGROUND

---

[1] This action was originally filed against Michael Leavitt in his official capacity as Secretary of the Department of Health and Human Services. Kathleen Sebelius, Mr. Leavitt's successor as Secretary, has been substituted here as defendant. *See* Fed. R. Civ. P. 25(d).

This case arises from the merger of a non-profit Medicare provider, Iowa Lutheran Hospital (Lutheran), into Iowa Methodist Medical Center (Methodist), which has since been renamed Central Iowa Hospital Corporation (Central Iowa). Central Iowa, as successor-in-interest to Lutheran, sought Medicare reimbursement for losses incurred by Lutheran in the merger. On December 8, 2006, the Administrator of the Centers for Medicare and Medicaid Services (CMS) denied Central Iowa's claim. Central Iowa challenges that denial here.

A. **Statutory and Regulatory Framework**

Under the Medicare statute, a provider is entitled to compensation for the "reasonable cost" of Medicare services. 42 U.S.C. § 1395f(b)(1). This includes an "appropriate allowance for depreciation on buildings and equipment." 42 C.F.R. § 413.134(a). An asset's depreciation allowance is based on its "historical cost"—i.e., "the cost incurred by the present owner in acquiring the asset," *id.* § 413.134(b)(1)—"[p]rorated over the estimated useful life of the asset." *Id.* § 413.134(a)(3). The resulting annual depreciation allowance is reimbursable to the extent that a provider uses the asset to provide Medicare services.

In addition to annual depreciation payments, the Secretary of Health and Human Services has determined that the disposition of a depreciable asset may result in a gain (or loss), for which a provider may receive a credit (or debit). Under the depreciation regulation, an asset's gain or loss is equal to the difference between the consideration received upon disposition and its "net book value"—i.e., its historical cost less any previous Medicare depreciation payments. *Id.* § 413.134(b)(9). If the disposition of an asset results in a loss, a provider may be reimbursed for Medicare's share of that loss; conversely, if the disposition of an asset results in a gain, the provider must reimburse Medicare for Medicare's share of that gain. *See id.* § 413.134(f).

2

Under subsection (f) of the depreciation regulation, the manner in which Medicare treats such gains or losses "depends upon the manner of disposition of the asset." *Id.* § 413.134(f)(1). If an asset is disposed of through a "bona fide sale," subsection (f) is straightforward: Medicare reimburses the provider for any loss incurred in the sale, while the provider reimburses Medicare for any gain. *Id.* § 413.134(f)(2). If the transaction is not a bona fide sale, however, subsection (f) does not provide for any adjustment. If an asset is disposed of through a "statutory merger"—i.e., "a combination of two or more corporations under the corporation laws of the State, with one or more of the corporations surviving"—the merged corporation is subject to subsection (f)'s provisions on gains and losses. *Id.* § 413.134(k)(2)(i). This case involves such a statutory merger.

In October 2000, the Secretary issued a guideline document regarding asset disposition in statutory mergers. Program Memorandum A-00-76 (Oct. 19, 2000) (PM A-00-76). This document clarifies that subsection (f)'s provisions apply to mergers involving for-profit *and* non-profit providers. PM A-00-76 at 1. In both kinds of statutory merger, Medicare will recognize a gain or loss on the disposition of assets if two requirements are met. First, the merger "must occur between or among parties that are not related." *Id.* Second, "the transaction must involve one of the events described in 42 CFR 412.134(f) as triggering a gain or loss recognition by Medicare (typically, a *bona fide sale*, as defined in the [Provider Reimbursement Manual (PRM)] at § 104.24[)]." *Id.* (emphasis added). PM A-00-76 thus effectively imposes the bona fide sale requirement on statutory mergers.

Under PRM § 104.24, a "bona fide sale contemplates an arm's length transaction . . . for *reasonable consideration*." PRM § 104.24 (emphasis added). In other words, a bona fide sale requires payment of reasonable consideration for depreciable assets. PM A-00-76 further explains what constitutes reasonable consideration:

3

> As with for-profit entities, in evaluating whether a bona fide sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets acquired is a requires aspect of such analysis. . . . Thus, a large disparity between the sales price (consideration) and the fair market value of the assets sold indicates the lack of a bona fide sale.

PM A-00-76 at 3.

## B. Factual and Procedural Background

Lutheran's merger with Methodist became effective on November 22, 1993. A.R. 356. Methodist, the surviving entity, was originally renamed Iowa Health System Hospital Corporation. A.R. 186. It has since been renamed Central Iowa. A.R. 235. Methodist's sole member, renamed as Iowa Health System, continued to be the surviving entity's sole member. A.R. 186, 511. As part of the merger agreement, Iowa Health System's board had 23 members, 11 of whom were appointed from Lutheran. A.R. 201–02, 352–53, 379. The surviving entity's board had 19 members, 9 of whom were appointed from Lutheran. A.R. 202, 386–87.

Central Iowa submitted a cost report to Medicare that treated the merger as a sale of Lutheran's assets. According to this report, Lutheran surrendered all of its assets, valued at $64.9 million, to Central Iowa. As consideration to Lutheran, Central Iowa assumed Lutheran's liabilities in the amount of $28.1 million. Def.'s SJM at 12, ECF No. 17; A.R. 167–68, 190–91, 756. It is undisputed that Lutheran received no consideration for its assets beyond the assumption of its liabilities. *See* Pl.'s SJM at 36, ECF No. 14; Def.'s SJM at 12. In its cost report, Central Iowa claimed that it was entitled to a Medicare reimbursement of $5.4 million. This claim treated the difference between the net book value of Lutheran's depreciable assets and the allocated consideration (i.e., the value of Lutheran's liabilities) as a loss. A.R. 236–37.

4

Medicare's fiscal Intermediary denied the loss claim, finding that the merger was between related parties. A.R. 1535. Central Iowa appealed to the Provider Reimbursement Review Board (PRRB), which reversed the Intermediary's denial on October 6, 2006. A.R. 56–68. The PRRB stated that the transaction was a statutory merger, and that Lutheran and Methodist were unrelated parties prior to the merger. A.R. 64–67. Although Lutheran's principals continued to participate on the surviving entity's board, the PRRB found that the related-party determination is based on the merging entities "as they existed *prior* to the transaction." A.R. 65–66 (emphasis in original). The PRRB then remanded the action to the Intermediary for a calculation of Central Iowa's loss. A.R. 67.

On December 8, 2006, CMS reversed the PRRB's decision, disallowing the loss claim for two independent reasons. A.R. 1–31. First, CMS determined that the merger was between related parties, noting that Lutheran's principals continued to participate on the surviving entity's board and as executives of that entity. A.R. 27. Second, CMS determined that the merger was not a bona fide sale as required for the realization of a loss on the disposition of depreciable assets. It found no arm's-length bargaining, nor any attempt by Lutheran to seek fair value for its assets. A.R. 29. It further found that the discrepancy between the reported value of Lutheran's assets and their sales price (i.e., the value of Lutheran's liabilities) indicated that no bona fide sale had occurred. A.R. 29. CMS thus concluded that the merger was not a transaction that accurately reflected Lutheran's actual and reasonable costs in the disposition of its Medicare assets. Its decision constituted the Secretary's final decision with regard to Central Iowa's claim for Medicare payment.

Central Iowa has moved for summary judgment, challenging the denial of its loss claim. Specifically, Central Iowa challenges CMS's reliance on PM A-00-76, asserting that the

5

Secretary's regulations do not impose the bona fide sale requirement on statutory mergers. Central Iowa further argues that the merger was between unrelated parties and that, even if the bona fide sale requirement applies, the assumption of Lutheran's debts was fair consideration for its assets. Finally, Central Iowa raises several procedural arguments with regard to the Secretary's ability to interpret her regulations to require the denial of its loss claim.

## II. DISCUSSION

### A. Standard of Review

Review of CMS's decision is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the Administrative Procedure Act, 5 U.S.C. § 706. Accordingly, the Court may set aside final agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E). Under familiar principles of agency review, the Court must "give substantial deference to an agency's interpretation of its own regulations," according the agency's interpretation "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). "[B]road deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily requires significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)).

### B. Analysis

Central Iowa argues that the Secretary's interpretation applying the bona fide sale requirement to statutory mergers is plainly contrary to her regulations. This argument fails in light of the Court of Appeals' recent decision in *St. Luke's Hosp. v. Sebelius*, 611 F.3d 900 (D.C.

Cir. 2010). In *St. Luke's*, which involved a transaction similar to the one at issue here, the Court

of Appeals held that a merger or consolidation must qualify as a "bona fide sale" under 42 C.F.R.

§ 413.134(f) for a party to claim an adjustment to its Medicare depreciation allowance. *Id.* at

905. The Court further held that the Secretary had reasonably interpreted "bona fide" to

encompass only transactions involving "reasonable consideration" that reflects the fair market

value of the assets transferred. *Id.* Accordingly, the Court upheld the Secretary's interpretation in

PM A-00-76 as not plainly erroneous or inconsistent with her regulations. *Id.* at 905–06.

Moreover, the *St. Luke's* Court upheld CMS's finding that the merger before it did not

qualify as a bona fide sale. *Id.* The surviving entity, St. Luke's Hospital, had claimed only that

the assumption of the merged provider's debts (valued at $4.8 million) was fair consideration for

the surrender of its assets (valued at $25.1 million) in the merger. *Id.* at 903. The Court

explained:

> Requiring a "reasonable" sales price, which reflects real market value,
> yields a gain or loss figure that approximates the actual gain or loss the
> provider has incurred since acquiring the asset. By contrast, the
> consideration paid in a transaction such as the merger here—an amount
> that simply reflects the level of debt the merged provider happens to carry
> at the time of the merger regardless of the assets' value—yields a figure
> unrelated to the actual change in the assets' value.

*Id.* at 905. Under this reasoning, the assumption of liabilities will not constitute reasonable

consideration where there is no indication that the value of the merged provider's liabilities

reasonably reflects the value of its assets. *See St. Luke's Hosp. v. Sebelius*, 662 F. Supp. 2d 99,

103 (D.D.C. 2009) ("If a merger involved the assumption of liabilities that closely mirrored the

true value of depreciable assets, or involved the competitive bidding of those asserts, it might

satisfy the bona fide sale requirements.").

Here, *St. Luke's* makes clear that the Secretary's interpretation applying the bona fide sale requirement to statutory mergers was reasonable. Thus, this Court need only determine whether CMS's finding that Lutheran's merger was not a bona fide sale was supported by substantial evidence. The Court holds that there was substantial evidence to support CMS's finding. As in *St. Luke's*, there was a sizeable disparity between the value of Lutheran's assets ($64.9 million)[2] and the consideration received (the assumption of $28.1 million in liabilities) for those assets. Central Iowa does not suggest that Lutheran received any consideration beyond the assumption of its liabilities. *See* Pl.'s SJM at 12, 33–36; Pl.'s Reply at 18–20, ECF No. 20. Instead, Central Iowa attempts to demonstrate that the transaction was a bona fide sale by arguing that Lutheran also transferred "untold, unknown liability potentials" in the merger. A.R. 191; Pl.'s Reply at 20. But as the Secretary argues, Central Iowa has made no attempt to calculate the value of potential liabilities, nor has it asserted that the merging parties viewed the assumption of such liabilities as consideration for Lutheran's assets. *See* Pl's SJM at 35–36; Pl.'s Reply at 19–20. Rather, the record simply indicates that the "sales price" of Lutheran's assets reflected its level of debt—not the real market value of its assets.

---

[2] The parties dispute this figure in their pleadings. In its summary judgment motion, Central Iowa contends that Lutheran's "business enterprise value" was only $35.5 million. Pl.'s SJM at 35 n.8. The Secretary points out, however, that this figure excludes monetary assets. Def.'s SJM at 23 n.7; A.R. 917, 972. Moreover, the record indicates that Central Iowa submitted a cost report to Medicare claiming that Lutheran's assets totaled $64.9 million. Def.'s SJM at 23 n.7; A.R. 38, 46. Central Iowa does not dispute this fact. Indeed, Central Iowa concedes that "the net book value of *all of Iowa Lutheran Hospital's assets other than its physical assets*, plus its construction in progress" was over $41 million. Pl.'s SJM at 34 (emphasis added). Based on the record, the Court finds that the total value of Lutheran's physical and monetary assets was $64.9 million. To the extent that Central Iowa quibbles with this figure, the Court finds that the record amply demonstrates that the value of Lutheran's assets greatly exceeded the value of its liabilities.

Substantial evidence thus supports CMS's finding that Lutheran did not dispose of its assets in a bona fide sale. Therefore, CMS properly denied Central Iowa's claim for a loss in the value of those assets. As noted above, CMS cited two independent reasons for its denial. Because there was substantial evidence to support the finding that the merger was not a bona fide sale, the Court need not address the related-party basis of CMS's denial.

Central Iowa also raises several procedural arguments to dispute the Secretary's ability to interpret her regulations to require the denial of its loss claim. Namely, Central Iowa contends that the Secretary changed her interpretation and failed to provide a rational explanation for doing so; that her interpretation violates the Deficit Reduction Act of 1984 and the Congressional Rule Act; that her interpretation is an impermissible retroactive imposition of a new standard, as memorialized in PM A-00-76; and that she did not follow APA rulemaking procedures to announce her new interpretation. The same arguments were raised in *St. Luke's*, and the district court rejected each one in turn. *See* 662 F. Supp. 2d at 104–05. The Court of Appeals summarily rejected these arguments for the same reasons as the district court. *See* 611 F.3d at 906 n.8. With regard to the claim of impermissible retroactivity, the Court of Appeals explained that "the Secretary generally may lawfully interpret a regulation notwithstanding retroactive effect." *Id.* at 907. For those reasons enumerated by the district court and Court of Appeals in *St. Luke's*, this Court rejects each of Central Iowa's procedural arguments.

### III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

On February 7, 2007, Central Iowa filed its complaint [14] in this case. On February 1, 2008, well after the conclusion of briefing, Central Iowa filed a motion [28] for leave to amend its complaint. Its proposed amended complaint asserts that the Secretary violated 42 U.S.C. § 1395hh(c)(1) by failing to timely list PM A-00-76 in the Federal Register. Under § 1395hh(c)(1),

the Secretary must publish a list of all manual instructions, interpretive rules, statements of policy, and guidelines of general applicability every three months. PM A-00-76 was issued on October 20, 2000, and published in the Federal Register on June 28, 2002. The Secretary opposes plaintiff's motion on grounds of futility.

"While leave to amend 'shall be freely given when justice so requires,' a district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *Nat'l Wrestling Coaches Ass'n v. Dept. of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 15(a)). Here, the Court finds that the proposed amendment would be futile. Central Iowa has failed to show that it suffered any prejudice from the publication of PM A-00-76 in June 2002, as opposed to October 2000. Indeed, the district court in *St. Luke's* rejected a claim identical to that of Central Iowa, explaining that St. Luke's Hospital had failed to show prejudice from the Secretary's error. *See* 662 F. Supp. 2d at 104. The Court of Appeals upheld the district court's rejection of the argument. *See* 611 F.3d at 906 n.8. Accordingly, this Court will deny Central Iowa's motion for leave to amend its complaint.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, plaintiff's Motion [14] for Summary Judgment will be DENIED, defendant's Cross-Motion [17] for Summary Judgment will be GRANTED, and plaintiff's Motion [28] for Leave to Amend Complaint will be DENIED.

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on February 1, 2011.